# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN CHRISTOPH**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 18-3453** |
| **v.** | : | |
| | : | |
| **AARP, INC**, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.　　　　　　　　　　　　　　　　SEPTEMBER 23, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

　　　　Plaintiffs Stephen Christoph and Glen Hill (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, brought this lawsuit against Defendants AARP, Inc., AARP Services Inc., AARP Insurance Plan (together, "AARP"), and UnitedHealthcare Insurance Company and UnitedHealth Group, Inc. (together, "United") (collectively, with AARP, "Defendants"), and assert five causes of action under Pennsylvania law; *to wit*: (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §201-2, *et seq*.; (2) conversion; (3) unjust enrichment; (4) fraudulent concealment; and (5) fraud. Plaintiffs contend that Defendants deceived them "into paying artificially inflated insurance charges for Medicare supplemental health insurance policies" known as AARP Medigap. Plaintiffs specifically allege that Defendants misrepresented that: (a) AARP Medigap premiums were used exclusively to pay for the costs of insurance when, in fact, 4.95% of the premiums were used to pay AARP an illegal commission; and (b) Defendants pay AARP royalty fees for the use of AARP's intellectual property when, in fact, the payments are illegal commissions related to the sale of AARP Medigap policies. As remedies, Plaintiffs seek a permanent injunction enjoining Defendants from engaging in the alleged conduct and disgorgement of the amounts by which their

insurance premiums have been "artificially inflated" by the unlawful commission/royalties paid to AARP but passed on to insureds as part of their premiums.

Before this Court is Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). [ECF 21]. In their motion, Defendants argue, *inter alia*, that Pennsylvania's filed rate doctrine precludes the asserted claims because these claims challenge insurance rates that have been submitted to and approved by the governing state regulatory entity. Plaintiffs oppose the motion. [ECF 23]. The issues raised in the motion have been fully briefed and are ripe for consideration.[1] For the reasons stated herein, Defendants' motion to dismiss is granted.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The facts relevant to the disposition of the underlying motion are as follows:[2]

> AARP is a 501(c)(4) tax-exempt nonprofit organization that advocates for seniors' interests; United is a health insurance company. (Compl. at ¶¶ 4, 26-27). United offers a Medigap insurance program to individual AARP members. (*Id.* at ¶¶ 6, 10, 19-20, 35). In 1997, United and AARP entered into a joint venture

---

[1] This Court has also considered Defendants' reply, [ECF 27], as well as each party's supplemental filings. [ECF 28-35].

[2] The facts set forth below are primarily taken from Plaintiffs' complaint. The recitation of relevant facts, however, includes some facts which are taken from documents referenced in the complaint and various public records attached to Defendants' motion to dismiss. It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "matters of public record, including court files and records, documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All of the facts have been construed in Plaintiffs' favor.

agreement entitled the "AARP Health Insurance Agreement." (*Id*. at ¶ 41). Under the terms of the Agreement, United pays AARP a 4.95% "commission" or "royalty" for the use of AARP's intellectual property in connection with its marketing of the insurance program. (*Id*. at ¶¶ 43-47) (*see also* Agreement, at §§4.2, 6.1).[3] The commission/royalties are calculated as a percentage of premiums, regardless of whether the coverage was sold through a third-party insurance agent or directly by United. (Compl. at ¶¶ 43-45) (Agreement §§ 6.1, 6.7). Plaintiffs contend that the 4.95% commission/royalties constitute an undisclosed and unlawful commission to an unlicensed insurance entity.

Medigap insurance, including that offered by United, is regulated at both the federal and state levels. United's rates for its Medigap insurance offerings, specifically those at issue here, were filed with and approved by the Pennsylvania state regulators.[4]

Plaintiff Stephen Christoph enrolled in United's Medigap Plan C effective January 1, 2017. Plaintiff Glen Hill enrolled in United's Medigap Plan F effective June 1, 2011. Both Plaintiffs have, at all times, paid the Commissioner-approved rates for their plans.

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (*quoting Ashcroft*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted).

---

[3] Because the complaint explicitly references and relies on a publicly available version of the Agreement (*see* Compl. at ¶41-51), this Court may consider the Agreement when assessing the legal sufficiency of the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").

[4] While United's rate filings with the state regulatory authority were not pled in the complaint, this Court can consider them because they are central to Plaintiffs' allegations and can be drawn from publicly available filings with a regulatory agency. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (holding that courts can take judicial notice of authenticated versions of publicly available documents filed with a regulatory agency); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 416 (S.D.N.Y. 2009) (taking judicial notice of the regulator's approval of United's Medigap rate filings and the precise rates being challenged).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In the underlying motion to dismiss, Defendants primarily argue that Plaintiffs' claims are barred by Pennsylvania's filed rate doctrine.[5] "The filed rate doctrine forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory authority." *Milkman v. Am. Travelers Life Ins. Co.*, 2002 WL 778272 at *14 (Pa. Ct. Com. Pl. April 1, 2002). "The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) [e]nsure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require." *Id*. The filed rate doctrine "bars recovery for injuries, including fraud-related injuries, arising from rates properly filed with the appropriate regulatory agency," *id*. at *14,

---

5     This Court must apply state law when deciding whether the filed rate doctrine applies to Plaintiffs' state common-law claim. *See Wayne Moving & Storage of N.J. v. Sch. Dist. of Phila*., 625 F.3d 148, 150 (3d Cir. 2010). It is clear, and the parties do not dispute, that Pennsylvania substantive law applies here.

4

and "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *Lombardi v. Allstate Ins. Co.*, 2011 WL 294506, at *7 (W.D. Pa. Jan. 27, 2011) (quoting *Milkman*, *supra*, at *14). Even "facially-neutral challenges—*i.e.*, any cause of action that is not worded as a challenge to the rate itself—are barred when an award of damages would, effectively, change the rate paid by the customer-[plaintiff] to one below the filed rate paid by other customers." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1322 (11th Cir. 2018) (alteration in original; internal quotations omitted). In this way, the filed rate doctrine "preserve[s] the exclusive role of . . . agencies in approving rates." *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012).

Under the filed rate doctrine, when a regulated entity must charge only rates "properly filed with the appropriate . . . regulatory authority," those rates may not be collaterally challenged through private litigation. *Lombardi*, 2011 WL 294506, at *7 (quoting *Milkman*, *supra*, at *14). When "regulated companies are required by federal or state law to file proposed rates . . . with a regulatory agency, any rate approved by the agency 'is per se reasonable and unassailable in judicial proceedings brought by ratepayers.'" *Steven v. Union Planters Corp.*, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000); *see also Patel*, 904 F.3d 1314 (applying Pennsylvania's filed rate doctrine and explaining that "[w]here the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer can claim no rate as a legal right that is other than the filed rate.").

As the United States Court of Appeals for the Third Circuit ("Third Circuit") has recognized, the filed rate doctrine is designed to advance two "companion principles:"

> (1) preventing carriers from engaging in price discrimination as between ratepayers, and (2) preserving the exclusive role of . . .

> agencies in approving rates . . . by keeping courts out of the rate-making process, a function that regulatory agencies are more competent to perform. These companion principles are often called the nondiscrimination strand and the nonjusticiability strand. The nonjusticiability strand recognizes that (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime. The nondiscrimination strand recognizes that victorious plaintiffs would wind up paying less than non-suing ratepayers.

*McCray*, 682 F.3d at 241–42 (internal citations and quotations omitted).

Medigap insurance—like that at issue here—is regulated at both the state and federal level. Medigap enrollees select from a number of standardized model plans defined by federal law, with each plan providing a distinct combination of benefits. *See* 74 Fed. Reg. 18808, 18808 (Apr. 24, 2009) ("Medigap policies generally may not be sold unless they conform to one of 14 standardized benefit packages."). State and federal laws comprehensively regulate policy terms, rates, marketing, and medical loss ratios for each individual Medigap insurance program. *See, e.g.*, 42 U.S.C. §1395ss; 40 Pa. Stat. Ann. §3101, *et seq*. In Pennsylvania, the Legislature has delegated the responsibility to promulgate regulations establishing standards for Medigap policies to the Pennsylvania Insurance Commissioner (the "Commissioner"). 40 Pa. Stat. Ann. §3109. Pursuant to those regulations, Medigap insurers may not charge premium rates unless they have been approved by the Commissioner. 31 Pa. Code §89.781(a),(c) ("An insurer may not use or change premium rates for a Medicare supplement policy or certificate unless the rates, rating schedule and supporting documentation have been filed with and approved by the Commissioner in accordance with the filing requirements and procedures prescribed by the Commissioner."). As such, an insurer must file its premium rates with the Commissioner and must obtain the Commissioner's

approval of those premiums before the premiums may be charged. Here, there is no dispute that the Commissioner has approved the United Medigap premium rates at issue in this case.

When examined closely, each of Plaintiffs' claims focus upon the "artificially inflated" premiums allegedly charged for the Medigap insurance coverage provided. Specifically, Plaintiffs allege in the complaint that the "end result of Defendants' violations of Pennsylvania insurance law is that consumers are charged an ***artificially inflated*** amount for insurance coverage . . . ." (Compl. at ¶12) (emphasis added) (*see also id*. at ¶73). As damages, Plaintiffs seek recovery of the "4.95% of the premiums that they have paid which were diverted to AARP in illegal commissions and which represent a premium that Plaintiffs and the Class paid above market rates for the insurance that they purchased." (*Id*. at ¶93) (*see also id*. at ¶¶ 76, 78). In light of these allegations, Plaintiffs' complaint shows that the they are challenging the insurance premium rates that were based upon rates filed with, and approved by, state regulators. *See Patel*, 904 F.3d at 1326 (finding that plaintiffs were challenging the insurance rates where they alleged that the rates were "artificially inflated"). Under the caselaw and statutes cited, Plaintiffs' claims are precluded by Pennsylvania's filed rate doctrine.

To counter Defendants' argument and the application of Pennsylvania's file rate doctrine, Plaintiffs rely on the Third Circuit's decision in *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009), to argue that their state law claims do not trigger the filed rate doctrine. Defendants argue that *Alston* is not binding on this Court because *Alston* did not entail the application of Pennsylvania's filed rate doctrine to state law claims, but rather applied the *federal* filed rate doctrine to specific *federal* statutory claim, which are not asserted here. Defendants argue that this Court should instead apply Pennsylvania's filed rate doctrine as applied by Pennsylvania state courts and recently by the United States Court of Appeals for the

Eleventh Circuit in *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314 (11th Cir. 2018), which applied the doctrine to bar Pennsylvania state law claims after distinguishing the Third Circuit's decision in *Alston*. After considering this argument, this Court agrees with Defendants and finds *Alston* inapposite to the claims *sub judice*.

Although *Alston* implicates the filed rate doctrine in the insurance context, Plaintiffs overstate the applicability of *Alston* to the present action. In *Alston*, the plaintiffs sought to recover statutory treble damages pursuant to Section 8(d)(2) of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(d)(2). *Alston*, 585 F.3d at 755. There, the plaintiffs alleged that their private mortgage insurance premiums were channeled into an unlawful "captive reinsurance arrangement" by their mortgage lender. *Id.* The "overriding question" before the court was not whether the filed rate doctrine barred the plaintiffs' claims, but rather "whether Congress intended to create a private right of action for a consumer who alleges a violation of RESPA section 8 in connection with his or her settlement." *Id.* at 758. Only after the court answered in the affirmative did it "briefly address" the filed rate doctrine, specifically focusing on Congress's intent in passing RESPA. *See id.* at 763–65 ("[I]f we were to find that the filed rate doctrine bars plaintiffs' claims, we would effectively be excluding [private mortgage insurance] from the reach of RESPA, a result plainly unintended by Congress.").

Finding that the filed rate doctrine was not applicable to the particular alleged scheme, the court's underlying rationale was tailored, and thus limited, to the contextual contours of RESPA. *See id.* at 764 (outlining four reasons why the doctrine did not apply to RESPA claims, such as "the purpose of RESPA" and the fact that "the measure of [statutory treble] damages is three times the price of [private mortgage insurance] . . . so there is no need to parse or second guess rates"). The *Alston* Court even cautioned that "[p]laintiffs may not sue under the veil of

8

RESPA if they simply think that the price they paid for their settlement services was unfair," a suit that would otherwise be barred by the filed-rate doctrine. *See id.* (quoting *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 576 (N.D. Cal. 2007)).

Notably, the Third Circuit did not even mention its *Alston* decision in two recent cases in which it applied the filed rate doctrine to affirm the dismissal of both federal and state law claims. Specifically, in *In re New Jersey Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012), the Third Circuit affirmed the district court's dismissal of federal and New Jersey state antitrust claims against various title insurance companies based on the filed rate doctrine. In doing so, the Third Circuit found that the plaintiffs were challenging the insurance premiums in violation of the filed rate doctrine. *Id*. at 457-60. Notably, the Third Circuit made no mention of its previous decision in *Alston.* Nor did the Third Circuit discuss any purported distinction in the filed rate doctrine's application to a plaintiff's purported challenges to conduct rather than filed rates as urged by Plaintiffs here.[6] Indeed, the Third Circuit does not appear to have cited its decision in *Alston* for anything pertaining to the filed rate doctrine. As such, this Court finds that the *Alston* decision is limited to the context of a claim brought pursuant to a federal statutory scheme which provides a private cause of action for particular conduct, such as RESPA. As such, *Alston* has no application to state law claims, like those asserted here.

As noted above, a review of Plaintiffs' complaint reveals that, just like the plaintiffs in *In re New Jersey Title* and *McCray*, Plaintiffs are challenging the rates being charged by Defendants for their insurance premiums. The complaint explicitly seeks to discount Plaintiffs' premiums by the amount of the alleged commission/royalties, which Plaintiffs contend

---

[6] Similarly, in *McCray v. Fidelity Nat. Title Ins. Co.*, 682 F.3d 229 (3d Cir. 2012), the Third Circuit affirmed the district court's dismissal of federal antitrust claims against various title insurance companies on the basis of the filed rate doctrine without making any mention of its previous decision in *Alston*.

9

"artificially inflate" their premiums and renders the premiums "prohibited by law." (Compl. at ¶¶ 12, 73). Consistent with the law cited, since these insurance premiums are based on rates filed with and approved by the state regulator, Plaintiffs' claims, which effectively challenge the rates themselves, are barred by the filed rate doctrine.

Notably, several district courts in other states have applied the filed rate doctrine to preclude analogous challenges to the same Medigap program at issue here. In *Roussin v. AARP, Inc.*, the Southern District of New York relied on New York's filed rate doctrine to dismiss a complaint that sought "relief for an injury allegedly caused by [the plaintiff's] payment of her AARP health care premiums, which include the AARP [royalty]." *See* 664 F. Supp. 2d 412, 416 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 30 (2d Cir. 2010). Because the New York State Department of Insurance had "approved the filed rate, including the challenged portion, in its entirety," the court held that the premium could not be challenged in litigation. 664 F. Supp. 2d at 418-19. Similarly, in *Peacock v. AARP, Inc.*, the Southern District of Texas (applying Texas law), reasoned that because the plaintiffs' claims "attack the legality *vel non* of the rates charged by Defendants for group [Medigap] insurance," the filed rate doctrine required dismissal of plaintiffs' claims in their entirety. 181 F. Supp. 3d 430, 439-41 (S.D. Tex. 2016). Most recently in *Dane v. UnitedHealthcare Ins. Co.*, 2019 WL 2579261 (D. Conn. June 24, 2019), the District Court of Connecticut granted the defendants' motion to dismiss identical claims asserted under Connecticut law because, *inter alia*, they were barred by the filed rate doctrine. After reviewing the decisions that have similarly dismissed challenges to the AARP royalty payment on filed rate grounds (same challenges at issue in the case *sub judice*) and finding those decisions persuasive, the *Dane* Court concluded that the plaintiffs' claims essentially challenged the payment of rates on file with a regulatory commission. *Id*. at *4-5.

This Court finds that Pennsylvania's filed rate doctrine requires dismissal of the complaint for the same reasons here; any judgment awarding Plaintiffs the amount of the commission/royalty expense as damages would inevitably alter Plaintiffs' premiums from the amounts approved by the Commissioner, impermissibly interfering with the Commissioner's own rate-making authority. *See Milkman*, 2002 WL 32170095, at *14; *Lombardi*, 2011 WL 294506, at *7; *Stevens*, 2000 WL 33128256, at *3; *see also Patel*, 904 F.3d at 1322. Such challenges are precluded by Pennsylvania's filed rate doctrine.

**CONCLUSION**

For the reasons stated herein, Plaintiffs' claims are barred by the filed rate doctrine. As such, Defendants' motion to dismiss is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, USDC, J*